NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA WAITERS, | |
| Plaintiff, | Civil Action No. 07-421 (PGS) |
| ·v | **OPINION** |
| HUDSON COUNTY CORRECTIONAL CENTER, | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

Defendant, the Hudson County Correctional Center ("HCCC"), makes this Motion to Dismiss for Failure to State a Claim and for Summary Judgment.[1] This is an action based upon Title VII for retaliation, discrimination on the basis of race, ancestry, sex[2] and age[3], and creation of a hostile work environment by HCCC and Oscar Aviles,[4] an agent of HCCC.

---

[1] The motion is entitled "motion to dismiss for failure to state a claim and/or summary judgment." Despite the reference to summary judgment, the court will not convert the motion to include same. Fed. R. Civ. P. 12(d).

[2] During a telephone conference on March 24, 2010, Plaintiff's attorney indicated that Waiters claim included discrimination on the basis of sex. However, none of the counts in the Complaint, nor in the First Amended Complaint, assert discrimination on the basis of sex. The Plaintiff is barred from claiming sex discrimination.

[3] Though the First Amended Complaint asserts liability under the Age Discrimination in Employment Act of 1967, as amended, ("ADEA") in both the Jurisdiction and Procedural Requirements sections of the Complaint, none of the facts alleged suggest such a violation. Nowhere in Plaintiff's pleadings is her age even indicated. Since Plaintiff's pleadings have failed to allege a prima facie case of age discrimination, her reference to age in the Jurisdiction and Procedural sections is dismissed (Compl. ¶¶ 3-6.)

[4] The matter was dismissed against Aviles on September 10, 2009.

1

I.      **Statement of Facts and Procedural History**

From August 14, 2000 through July 14, 2005, Waiters was employed as a corrections officer at HCCC. She was disciplined on many occasions, including at least three incidents in 2004. In late 2003/early 2004, Waiters' mother, Betty Moore, who is also an employee of HCCC, allegedly filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[5] Thereafter, allegedly in retaliation for the filing of her mother's EEOC complaint, Waiters had disciplinary charges brought against her at work in October 2004, ultimately resulting in a 65-day suspension beginning in November 2004.

On February 7, 2005, Waiters filed an EEOC complaint alleging discrimination on the basis of race and retaliation ("First EEOC Complaint"). On June 30, 2005, the EEOC issued a "Notice of Right to Sue" letter based on the charge.

On September 1, 2005, Waiters filed another EEOC complaint ("Second EEOC Complaint") alleging discrimination on the basis of retaliation for her First EEOC Complaint. Specifically, the charge alleged harassment and false disciplinary charges by HCCC Director Aviles, which arose out of an April 2005 incident involving two other female officers and culminated in Plaintiff's discharge in July 2005. The EEOC issued a "Notice of Right to Sue" letter regarding that charge on December 11, 2006.[6]

Thereafter, on January 26, 2007, Waiters filed a *pro se* complaint in the United States District Court, alleging perjury by Aviles with regard to documents submitted for her

---

[5] There is some information that the Moore complaint was actually filed in 2000.
[6] On August 31, 2006, Waiters filed another complaint with the EEOC alleging discrimination on the basis of race and retaliation ("Third EEOC Complaint"). The charge repeated the allegations contained in the previous two complaints, as well as allegations of harassment while taking her mother to work following her Second EEOC Complaint. Neither party has produced a corresponding "Notice of Right to Sue" letter regarding this charge; and at oral argument by telephone, Plaintiff's attorney voluntarily dismissed the Third EEOC Complaint allegations.

2

termination hearing. The complaint was dismissed without prejudice. Plaintiff obtained counsel, and the First Amended Complaint was filed on September 8, 2008.

## II.     Statute of Limitations

The First Amended Complaint is comprised of five counts. The first four counts allege violations of Title VII based on all of the facts over the entire time period.  As a result, the First Amended Complaint concurrently alleges the facts of the First EEOC Complaint and the Second EEOC Complaint together.  In order to meet the Title VII statute of limitations, Plaintiff alleges that she suffered a continuing discriminatory violation and all the complaints should be considered as a whole.  This argument is rejected.

The continuing violation theory is an equitable exception to the timely filing requirement, allowing recovery for discriminatory actions causing a hostile work environment which occurred prior to the limitation period of Title VII, when at least one act occurred within the limitation period.  *See, e.g.*, *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116-17 (2002).  In that case, the Court noted that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.*  However, looking at the case in closer detail, the Court distinguished discrete acts that are individually actionable from non-discrete acts, not individually actionable, which may be aggregated to make out a hostile work environment claim. The Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.  Thus, time-barred claims cannot be resurrected by being aggregated and labeled continuing violations.

Applying *National Railroad*, the Third Circuit noted, "[w]e can thus take from [*National Railroad*] the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006); *see also Bullock v. City of Philadelphia*, 250 F. App'x 512, 514-15 (3d Cir. 2007). Here, Plaintiff's allegations are comprised nearly completely of discrete acts, such as wrongful discipline, suspension, and termination. Therefore, the continuing violation doctrine does not apply in this case.

It is well settled that an EEOC action must be filed within 180 days of the allegedly discriminatory conduct; and that from the issuance of a Right to Sue letter, a complainant has 90 days from receipt of said letter to file a lawsuit. 42 U.S.C. § 2000e-5(f)(1); *Burgh v. Borough Council of Borough Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) ("The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII.") (internal citations omitted). The Third Circuit has "strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." *See Burgh*, 251 F.3d at 470.

Plaintiff filed the First EEOC Complaint on February 7, 2005, alleging incidents of discrimination in October 2004 and January 2005. The EEOC issued the accompanying Right to Sue letter on June 30, 2005. Although the First EEOC Complaint was timely filed with the EEOC, the district court complaint was filed on January 26, 2007, more than 90 days after the receipt of the Right to Sue letter. Therefore, with respect to those allegations, the plaintiff has failed to timely file her complaint within 90 days. *See id*.

Plaintiff filed the Second EEOC Complaint was on September 1, 2005; the alleged course of conduct began in February 2005 and ended in July 2005, around the time when she was terminated from employment. The EEOC issued a Right to Sue letter for that complaint on December 11, 2006. Because Waiters's district court complaint was filed within 90 days of the receipt of the letter, those allegations are timely filed before this Court.

### III. Failure to State a Claim

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran and Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. The question is whether the claimant can prove any set of facts consistent with his or her allegation that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). While a court will accept well-pled allegations as true for purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted); *see also Iqbal*, 129 S. Ct. at 1949-50.

Count I: Retaliation

In the Second EEOC Complaint, the basis of this action, Waiters alleges that she was retaliated against as a result of filing her First EEOC Complaint by (a) being unnecessarily disciplined per false disciplinary notices, (b) being harassed by Director Aviles, (c) the Defendant's failure to take remedial measures following her complaints of harassment by two other female officers, and (d) being discharged for allegations by the two female officers Waiters had complained about. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

The only element in dispute is the causal connection factor. Causal connection, "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tele. Co.*, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071, (1982). Here, the adverse action complained of commenced no later than two months after Plaintiff's EEOC charge filing, and culminated in

her discharge five months after the filing. Thus, Plaintiff has plead the necessary elements to establish a prima facie claim of retaliation and, given the heightened standard of review on motions to dismiss pursuant to Rule 12(b)(6), Defendant's argument to the contrary fails. *Kachmar v. SunGard Dada Systems,* 109 F.3d 173, 177 (3d Cir.1997).

<u>Counts II and III: Discrimination Based on Race and Ancestry</u>

Plaintiff's second and third counts allege discrimination based on race and ancestry, respectively, in violation of Title VII. To establish a prima facie case of discrimination under Title VII, the plaintiff must prove that she (1) belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-12 (3d Cir. 1999); *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 & n.6 (1981)*; McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)*.*[7]

Here, Plaintiff is of African-American descent; thus, she is a member of a protected class by virtue of her race and of her ancestry, satisfying the first prong. The fact of her employment

---

[7] In cases such as this, where discriminatory conduct is alleged, claims brought under Title VII must be analyzed according to the burden-shifting framework as set forth by the Supreme Court. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), later clarified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). The framework consists of three steps. First, a Plaintiff must present sufficient evidence to support a prima facie case of discrimination. *Hicks*, 509 U.S. at 506. Once the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant, who must articulate a legitimate, non-discriminatory reason for its actions. *See Hicks*, 509 U.S. at 507; *Burdine*, 450 U.S. at 254; *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this burden, the reviewing court must proceed to the third step. At this stage, the burden of production shifts back to the plaintiff, who must come forward with admissible evidence showing that the defendant's articulated, nondiscriminatory reasons were not the true reasons for the adverse action, but merely a "pretext for discrimination." *See Hicks*, 509 U.S. at 507-08; *Burdine*, 450 U.S. at 253.

satisfies the second prong. The third prong is satisfied, as discharge constitutes an "adverse employment action." *See generally Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) (discussing tangible adverse employment actions and providing the following non-exhaustive list: "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). The fourth prong requires that the circumstances of the adverse action give rise to an inference of discrimination based on the plaintiff's race or ancestry. This prong is flexible and may be satisfied in several ways; however, a plaintiff "cannot sustain a claim simply by asserting an event and then asserting that it was motivated by racial bias." *Davis v. City of Newark*, 285 F. App'x. 899, 903 (3d Cir. 2008). Plaintiff bases her race and ancestry allegations on mere speculation about the motives behind her discipline and discharge. In the second count of the complaint, Plaintiff conclusorily states that "[t]he conduct of Defendant amount to discrimination based on race and/or color." (Compl. ¶ 23.) Similarly, in the third count of the complaint, Plaintiff alleges that "[t]he conduct of Defendant constituted discrimination based on ancestry." (Compl. ¶ 29.) Plaintiff provides no additional allegations to support those two statements. "Speculation is simply not evidence of discrimination." *Hicks v. Tech Industries*, 512 F.Supp.2d 338, 348 (W.D.Pa. 2007). The Supreme Court in *Iqbal* held that a court may not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See* 129 S. Ct. at 1949. There is no fact or circumstance alleged in the First Amended Complaint that supports an inference of discrimination based on Plaintiff's race or ancestry; therefore, counts two and three are dismissed.

Count IV: Hostile Work Environment

In order to establish a hostile work environment claim, a plaintiff must show that the harassment was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). The Supreme Court has made clear that Title VII is not a "general civility code," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and has also instructed:

> Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Hence, [a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotes and citations omitted).

Title VII "does not mandate a happy workplace." *Jensen v. Potter*, 435 F.3d 444, 451 (3d Cir. 2006). Rather, a hostile work environment claim requires discrimination based on a protected characteristic that is "severe enough to affect the psychological stability of a minority employee." *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990), *superseded by statute on other grounds*, 42 U.S.C. §§ 1981, 2000e et seq. (1991). As described above, the Plaintiff has not alleged any facts or circumstances that adequately plead discriminatory motives for the alleged incidents. Plaintiff only provides two conclusory statements alleging race and

ancestry discrimination. Those two statements fail the threshold inquiry. As such, Plaintiff has not adequately plead a hostile work environment claim. Count four is dismissed.

### Count V: Common Law Retaliation

Title VII does not preempt state-based claims, including common law claims. *See* 42 U.S.C. § 2000e-7. However, both state and federal courts have found that New Jersey's Law Against Discrimination ("NJLAD") preempts or precludes supplementary common law actions. *See Butler v. Sherman, Silverstein & Kohl, P.C.*, 755 F. Supp. 1259 (D.N.J. 1990); *Shaner v. Horizon Bancorp.*, 561 A.2d 1130, 1141 (N.J. 1989); *Catalane v. Gilian Instrument Corp.*, 638 A.2d 1341 (N.J. Super. Ct. App. Div. 1994). NJLAD's protection against retaliatory discrimination is analogous to Title VII's provisions. *See* N.J. Stat. § 10:5-12. "The [New Jersey] Supreme Court does not intend to allow a supplementary common law cause of action where the NJLAD provides a remedy for the wrong." *Butler*, 755 F. Supp. at 1265 (internal citations omitted). As there exists a statutory remedy under NJLAD for Plaintiff's claims, it would be inappropriate to apply New Jersey common law in this case. Plaintiff's fifth count is dismissed.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. Defendant's motion is denied as to the first count, and the remaining counts (2-5) are hereby dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

May 5, 2010